## COMMONWEALTH vs. PAUL GUNTER.

Suffolk. November 6, 1997. - April 14, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Evidence,* Prior misconduct, Relevancy and materiality, Motive, Identification. *Practice, Criminal,* Instructions to jury, Reasonable doubt, Capital case, Required finding, Comment by prosecutor, Argument by prosecutor, Presumption of innocence, Duplicative convictions. *Identification. Armed Assault in a Dwelling. Intent. Felony-Murder Rule. Joint Enterprise.*

At the trial of a murder case, the judge did not err in admitting evidence of the defendant's involvement in drug dealing, where the evidence was probative of the defendant's motive and of his knowledge and intent as a person charged with participation in a joint venture [262-263], and the judge did not abuse his discretion in denying the defendant's motion for a mistrial on the ground that the amount of such evidence was prejudicial [263-264].

At a murder trial, testimony concerning an extrajudicial identification by an identifying witness was properly admitted to corroborate the witness's in-court identification, as well as for probative purposes and for rebuttal. [264]

At a murder trial, the evidence was sufficient for the jury to infer beyond a reasonable doubt that the defendant shared the intent to commit, and was prepared to assist in, the felony of armed assault in a dwelling underlying the alleged felony-murder. [264-265]

At a murder trial, no substantial likelihood of a miscarriage of justice was created by the prosecutor's comment on the credibility of a witness. [265-266]

At a murder trial, no substantial likelihood of a miscarriage of justice was created by the judge's instructions on the presumption of innocence [266-267]; by the judge's misstatement of a single word in his instruction on reasonable doubt [267]; by the judge's instructions on general and specific intent, which adequately stated the Commonwealth's burden to prove the requisite state of mind [268-270]; or by the judge's ill-advised but isolated reference to the absence of a death penalty in Massachusetts in an attempt to remove extraneous considerations from jury deliberation [270].

No reason appeared on the record of a murder trial for this court to exercise its power under G. L. c. 278, § 33E, to reduce the verdict of murder in the first degree or grant a new trial. [270-271]

In the circumstances of a murder case, in which the defendant was convicted as a joint venturer of murder in the first degree on a theory of felony-murder, and in which the underlying felony was armed assault in a dwelling with intent to commit a felony (G. L. c. 265, § 18A), the felonious as-

sault was sufficiently independent of the homicide to support the defendant's conviction of murder in the first degree [271-275]; however, where proof of the independent felony was essential for conviction of the felony-murder, it was a lesser included offense, conviction of which was duplicative [275-276].

INDICTMENT found and returned in the Superior Court Department on September 18, 1992.

The case was tried before *Robert W. Banks*, J.

*Esther J. Horwich* (*Jennifer Appleyard* with her) for the defendant.

*Eric Neyman*, Assistant District Attorney, for the Commonwealth.

The following submitted briefs for amici curiae:

*Carol A. Donovan* for Committee for Public Counsel Services.

*Paul F. Walsh, Jr.*, District Attorney, & *Elspeth B. Cypher*, Assistant District Attorney, for the Commonwealth.

MARSHALL, J. The defendant, Paul Gunter, was convicted of murder in the first degree on a theory of felony-murder, G. L. c. 265, § 1, armed assault in a dwelling with intent to commit a felony, G. L. c. 265, § 18A, and illegal possession of a firearm, G. L. c. 269, § 10 (*a*). The jury were warranted in finding that Gunter was a joint venturer with two other individuals, based on his role in transporting the others to and from the murder scene. Gunter received a sentence of life in prison for the murder, a concurrent life sentence for the armed assault in a dwelling, and a concurrent term of from four to five years on the firearms offense. Gunter advances a number of claimed errors in evidentiary rulings, in jury instructions, and in a comment in the prosecutor's closing argument. Gunter also argues that his conviction on the charge of armed assault in a dwelling is duplicative of his first degree felony-murder conviction. Finally, Gunter asks that we exercise our extraordinary power under G. L. c. 278, § 33E, to reduce his conviction and direct an entry of a lesser degree of guilt or order a new trial. Pursuant to our review under G. L. c. 278, § 33E, we requested that the parties brief an additional issue that the defendant had not raised — whether the underlying felony supporting Gunter's felony-murder conviction was sufficiently independent of the

murder itself to justify the murder conviction.[1] We affirm Gunter's conviction of felony-murder and illegal possession of a firearm. The conviction of armed assault in a dwelling must be vacated.

1. The Commonwealth presented evidence that Gunter and several other individuals were involved in selling drugs out of an apartment in the Dorchester section of Boston. Gunter's role included paying the apartment residents, Rosalie Mitchell and Derek Sealy, a "rental fee" in cash or in drugs for the use of the apartment. On March 21, 1991, three men entered the apartment and stole cocaine from one of the drug dealers affiliated with the operation. Gunter, Corey "Floyd" Selby,[2] Mark Edwards, and Larricia McConnico, a woman who had brought the thieves to the apartment on an earlier night and knew where they might be found, went looking for the thieves. Gunter drove the three to another apartment in Dorchester. Selby and Edwards carried loaded guns. Gunter remained in the car while the others went into that apartment. Admitted to the apartment, Selby and Edwards pushed Jack Berry, Jr.,[3] down the hall toward the kitchen. Berry was visiting Anthony Madden and Annette Gilbert, the apartment residents. While Edwards held Berry, Madden, Gilbert, and Gwendolyn McKenzie, Gilbert's friend, in the kitchen at gunpoint, Selby searched the apartment and the other two floors of the residence. Selby failed to find either the thieves or the stolen drugs. Edwards and McConnico, followed by Selby, then left, but, as Berry was closing the door behind them, Selby pushed the door back open, said "give this message to [the thieves]," and fatally shot Berry. They ran back to

---

[1] In addition to supplemental briefs submitted by the parties, we received amicus briefs from the Bristol County district attorney and from the Committee for Public Counsel Services on this issue.

[2] See *Commonwealth* v. *Selby*, 426 Mass. 168 (1997).

[3] The indictments against Gunter spell Berry's surname as "Barry." While we normally spell names as they appear in the indictment, cf. *Commonwealth* v. *Vazquez*, 426 Mass. 99, 99 n.1 (1997), we here spell Berry's name consistent with its spelling in our earlier opinions on interlocutory appeals from Selby, Edwards, and Gunter. See *Commonwealth* v. *Edwards*, 420 Mass. 666, 668 (1995) (addressing Gunter's interlocutory claims on appeal together with those of Edwards); *Commonwealth* v. *Selby*, 420 Mass. 656, 657 (1995). We spell McConnico's name consistent with the spellings in those opinions as well.

the vehicle where Gunter was waiting. Edwards testified[4] that, when he told Gunter that Selby had shot someone, Gunter said words to the effect that "nobody will rob us no more."

Sometime later, on September 15, 1992, based on information from a police interrogation of Edwards implicating Gunter, the police interrogated Gunter.[5] Gunter admitted that he had driven with the others to and from the murder scene, that he knew Selby and Edwards were armed, and that he knew Selby's intention was to kill or hurt the thieves. Gunter claimed that he had participated involuntarily because he was threatened and ordered to do so, and that he had told Edwards and Selby as they got out of the car that he did not want anyone to get hurt.

2. The defendant moved, in limine, to exclude evidence that he was involved in drug dealing. The judge denied his motion. Following the prosecutor's opening remarks, the judge gave a limiting instruction to the jury to the effect that, despite the evidence that they would hear of Gunter's drug dealing, he was not charged with any drug-related crime and that the jurors should consider only Gunter's guilt or innocence on the indictment in the case. At the beginning of the second day of trial, Gunter moved for a mistrial, claiming that not only was evidence on his drug dealing admitted, but it constituted the bulk of the testimony during the first day of trial and was therefore overwhelmingly prejudicial. The judge denied his motion for a mistrial, as well. On appeal, Gunter claims that evidence of his involvement in the drug business was not probative of any issue at trial or, alternatively, its prejudice outweighed its probative value.

Although evidence of a defendant's prior bad acts is inadmissible to prove bad character or a defendant's propensity to commit the crime with which he is charged, such evidence may be relevant for other purposes. See *Commonwealth* v. *Marrero*, *ante* 65 (1998); *Commonwealth* v. *Fordham*, 417 Mass. 10, 22 (1994); *Commonwealth* v. *Otsuki*, 411 Mass. 218, 236 (1991). It

---

[4]Three weeks prior to the trial, Edwards pleaded guilty to manslaughter. In exchange for testimony against Gunter, the Commonwealth reduced its recommended sentence for Edwards, of from eighteen to twenty years, to from eleven to twenty years. Edwards, not a United States citizen, also agreed to waive any challenge to deportation when he is released from custody.

[5]Gunter, Edwards, and Selby unsuccessfully appealed from the denial of pretrial motions to suppress custodial statements made to police. See *Commonwealth* v. *Edwards, supra* at 666; *Commonwealth* v. *Selby, supra* at 656.

may be admissible for the purposes of showing motive, intent, or knowledge. P.J. Liacos, Massachusetts Evidence § 4.4.6, at 155 (6th ed. 1994 & Supp. 1995). Evidence of prior bad acts also may be admitted if it is "inextricably intertwined with the description of events on the [day] of the killing." *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269 (1982), quoting *Commonwealth* v. *Hoffer*, 375 Mass. 369, 373 (1978) "Evidence that is otherwise relevant to the offense charged is not rendered inadmissible simply because it tends to prove the commission of other crimes." *Commonwealth* v. *Jackson*, 384 Mass. 572, 577 (1981).

On review, whether the prejudice likely to be generated by such evidence outweighs its probative value is a matter on which the opinion of the trial judge will be accepted except for palpable error. See *Commonwealth* v. *Young*, 382 Mass. 448, 463 (1981). We have affirmed that evidence of drug dealing was admissible as probative of a defendant's motive to murder, see *id.*, and of a defendant's knowledge and intent as a person charged with participation in a joint venture. See *Commonwealth* v. *Valentin*, 420 Mass. 263, 270 (1995). We see little difference between the evidence presented in those cases and this one. The judge committed no error in admitting the evidence.

Gunter's motion for a mistrial emphasized that the amount of such evidence was prejudicial. At the opening of the prosecution case, after some brief testimony from the victim's brother, the next two witnesses were Mitchell and Sealy, the residents of the apartment where the drugs had been sold. For the remainder of the first day of trial, they testified almost exclusively about the drug operation, including Gunter's role.[6] We conclude that any potential prejudice on the part of the jury was controlled by the judge's favorable rulings on defense counsel's objections when the prosecutor attempted to stray too far from that drug evidence necessary to present the Commonwealth's case, as well as the judge's clear and forceful limiting instruction before any witnesses testified. No further instructions were requested by Gunter, nor did he object to the judge's failure to give further instructions. " 'Jurors are expected to follow instructions to disregard matters withdrawn from their consideration.' . . . . The judge's instructions were clear, and we must presume the jury followed them." *Commonwealth* v. *Helfant*, 398 Mass. 214, 228 (1986), quoting *Commonwealth* v. *Cameron*, 385 Mass. 660, 668 (1982).

[6]The trial concluded half-way through the third day.

The judge did not abuse his discretion in denying the motion for a mistrial. *Commonwealth* v. *Maldonado*, 389 Mass. 626, 629 (1983).

3. Gunter appeals from the judge's admission, over objection, of a police officer's testimony concerning his out-of-court conversation with Edwards, claiming that Edwards's statement to the officer was hearsay. Edwards also testified at the trial. The police officer was allowed to testify that Edwards said that Gunter "was the individual who drove him to the location where the man was shot, waited for them, and then drove them back." The Commonwealth offered this testimony for two purposes: that Edwards, on first being interrogated, identified Gunter as the driver; and that Edwards made a prior consistent statement that rebutted Gunter's defense counsel's suggestion in cross-examination that at trial Edwards's testimony about Gunter was recently fabricated in exchange for the prosecutor's reduction in Edwards's recommended sentence.

We have long held that the testimony of a witness concerning an extrajudicial identification by an identifying witness is admissible to corroborate an in-court identification. *Commonwealth* v. *Repoza*, 382 Mass. 119, 129-130 (1980), *S.C.*, 400 Mass. 516, cert. denied, 484 U.S. 935 (1987); *Commonwealth* v. *Sheeran*, 370 Mass. 82, 87 (1976). More recently, we held that the testimony of a witness, in this case the officer, concerning an extrajudicial identification by an identifying witness, here Edwards, consistent with the testimony of the identifying witness at trial, was admissible for probative purposes as well. See *Commonwealth* v. *Daye*, 393 Mass. 55, 60 n.8 (1984); *Commonwealth* v. *Weichell*, 390 Mass. 62, 71 (1983), cert. denied, 465 U.S. 1032 (1984). There was no error in admitting the officer's testimony, nor was the judge required to give a jury instruction that the testimony was to be used only to rehabilitate Edwards's credibility.

4. The defendant moved for a required finding of not guilty at the close of the Commonwealth's case. A defendant is entitled to a required finding of not guilty if the Commonwealth fails to introduce evidence which, viewed in the light most favorable to the Commonwealth, would satisfy a rational trier of fact of each element of the crime beyond a reasonable doubt. *Commonwealth* v. *Walker*, 401 Mass. 338, 339-340 (1987). "[A] motion for a directed verdict should be denied 'if all the circumstances including inferences [that are not too remote ac-

cording to the usual course of events] are of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt.' " *Commonwealth* v. *Latimore*, 378 Mass. 671, 676 (1979), quoting *Commonwealth* v. *Clark*, 378 Mass. 392, 403-404 (1979). Gunter argues that the Commonwealth did not show that he intentionally assisted Selby and Edwards or that he shared the requisite intent to commit the underlying felony, elements needed to show Gunter's joint venture with Selby and Edwards in the commission of felony-murder.

We disagree. The Commonwealth presented evidence that Gunter had an active role and a stake in the drug operation with a motive to retrieve the drugs that had been stolen; he and the coventurers made a decision to retrieve the drugs; he drove with them to and from the murder scene; Gunter admitted that Selby and Edwards went "to kill the person responsible for robbing the drug house"; he knew they had guns; and he made a statement to Edwards after the killing that demonstrated consciousness of guilt. See *Commonwealth* v. *Rojas*, 388 Mass. 626, 629 (1983). This evidence was sufficient, viewed in the light most favorable to the Commonwealth, for the jury to infer beyond a reasonable doubt that Gunter shared the intent to commit and was prepared to assist in, if needed, the felony of armed assault in a dwelling. The judge's denial of Gunter's motion was proper.

5. Gunter argues that the prosecutor committed reversible error by commenting on Sealy's testimony as follows: "Why does he come in and say that? Is he being given a 'get-out-of-jail free' card? Believe me, if that were the case, [defense counsel] would have brought that out."[7] The defendant contends that the prosecutor's comment may have been interpreted by the jury that a burden of proof rested on the defense, or as a reflection on the failure of Gunter to take the stand, or as implying the existence of an unidentifiable witness. Gunter did not object to the prosecutor's comment or ask for curative instructions. Without a timely objection by Gunter, our review is limited to whether the comment created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Blanchette*, 409 Mass. 99, 104-105 (1991); *Commonwealth* v. *Roberts*, 378 Mass. 116, 123 (1979). In the context of the entire closing argument, we conclude that such interpretations of the prosecutor's

[7]At the time of Gunter's trial, Sealy was serving a sentence unrelated to the instant case.

argument as to the credibility of the Commonwealth's witnesses are remote. Gunter's cross-examination and closing argument emphasized that Edwards had struck a deal with the prosecution for a reduction in recommended sentence in exchange for testimony. The defense never suggested that Sealy had made any deal for a reduction in sentence or other consideration on the unrelated crime in exchange for his testimony. The prosecutor's comment is most readily interpreted as contending that Sealy had no motive to lie. The comment created no substantial likelihood of a miscarriage of justice.

6. Gunter claims that the judge made several instructional errors requiring reversal. Gunter made no timely objections to the instructions. We therefore review such claimed errors by the standard whether they create a substantial likelihood of a miscarriage of justice. *Blanchette, supra*; *Roberts, supra.*

a. Gunter complains that the one part of the judge's instruction on the presumption of innocence may have confused the jury. The judge said:

> "The presumption of innocence would require you, and does require you to return a verdict of not guilty on these charges unless, during the course of this case, the government overwhelmed that presumption of innocence by proof beyond a reasonable doubt of the guilt of the defendant.

> "And if they did that, that presumption of evidence overwhelming the presumption of innocence, causes it to dissipate and it disappears like it never existed."

Gunter asks us to contrast this instruction with what we viewed as sufficient in *Commonwealth* v. *Powers*, 294 Mass. 59, 63 (1936):

> "It is only when the Commonwealth begins to introduce its evidence that that presumption in [the defendant's] favor begins to disappear; as the evidence against him goes in, then the presumption grows less and less strong; and if, at the conclusion of the case, the Commonwealth has convinced you beyond a reasonable doubt of his guilt, then the presumption has disappeared entirely . . . ."

We see no dramatic difference, as Gunter contends, between these two charges. Each charge states in slightly different ways

that the defendant's presumption of innocence only disappears after the Commonwealth has presented evidence that has convinced the jury beyond a reasonable doubt of the defendant's guilt.[8] Moreover, the quoted passage was not the only instruction on the presumption of innocence given by the judge. We are satisfied, in our review of the judge's instruction on this issue as a whole, that he competently communicated Gunter's right to a presumption of innocence in numerous forceful ways.

b. Gunter also complains of the judge's lapse in stating to the jury the instruction on reasonable doubt in the "time-tested language of *Commonwealth* v. *Webster.*" *Commonwealth* v. *Ferreira*, 373 Mass. 116, 130 n.12 (1977), citing *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850). The judge repeated substantial portions of the *Webster* instruction, but instead of saying that a fact is proven beyond a reasonable doubt to a moral certainty when it leaves in the jury's mind "a clear and settled conviction of guilt,"[9] the judge said "a clear and subtle conviction of guilt." Otherwise, the judge's charge made clear the prosecutor's burden of proof and used the phrase "moral certainty" "linked with language that lends content to the phrase." *Commonwealth* v. *Pinckney*, 419 Mass. 341, 345 (1995).

"Error in a charge is determined by reading the charge as a whole, and not by scrutinizing bits and pieces removed from their context." *Commonwealth* v. *Grant*, 418 Mass. 76, 85 (1994), quoting *Commonwealth* v. *Cundriff*, 382 Mass. 137, 153 (1980), cert. denied, 451 U.S. 973 (1981). The substitution of a word was error, but in the context of the charge as a whole, "[a] reasonable juror could not have misunderstood or have been misled by this slip of the tongue," *Grant, supra*, or have convicted Gunter under an erroneous standard of proof. The error does not create a substantial likelihood of a miscarriage of justice.

---

[8]Cf. *Commonwealth* v. *Kane*, 19 Mass. App. Ct. 129, 139 (1984) (holding instruction was "mangled" and constituted prejudicial error, which stated that "the presumption of innocence remains with the defendant until evidence of guilt is *introduced*. It then disappears but the defendant is entitled to require the government to satisfy the jury of facts that he is guilty." [Emphasis added.])

[9]This phrase is not found in *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850).

c. Gunter also contends that the judge erred in explaining to the jury general intent, and confused the jury in explaining specific intent. To convict Gunter of felony-murder, the jury must have found that Gunter shared the specific intent of his co-venturers in committing the underlying felony defined in G. L. c. 265, § 18A. That felony also has a specific intent element — armed assault in a dwelling "with intent to commit a felony." The judge initially defined both general intent[10] and specific intent in the abstract, attempting to distinguish the latter from the former. After defining general intent, the judge defined specific intent:

> "Specific intent is different. There must be thought before action. Conscious thought for some period of time no matter how short. Contemplation and then action in furtherance of that contemplation. A realization of the mind, a willingness. A conscious willingness to do something. A specific intent."

The "venerable distinction" at common law between general intent and specific intent "has been the source of a good deal of confusion." *United States* v. *Bailey*, 444 U.S. 394, 403 (1980), citing W. LaFave & A.W. Scott, Jr., Criminal Law § 28, at 201-202 (1972). Commenting on the relationship between the traditional common-law dichotomy between general and specific intent and the alternative analysis of mens rea in the Model Penal Code, the Supreme Court explained that "[i]n a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent." *Bailey, supra* at 405, citing W. LaFave & A.W. Scott, Jr., *supra.* We do not think it necessary that a judge use the common-law terms, general

[10]The judge further instructed:

"The difference is general intent is more or less a reflex action. It doesn't require an awful lot of thought, preoccupation of the mind, dwelling on it. For instance, you get up in the morning and you wind up in the bathroom brushing your teeth. It happens every morning but you really don't give it much thought. It just happens. Somewhere in the recesses of your mind you go through that process and do it, but it's almost reflex."

intent and specific intent,[11] provided that he explains to the jury the Commonwealth's burden on the specific intent element in a charged offense such as this — that a defendant must not only have consciously intended to take certain actions, but that he also consciously intended certain consequences, in this case the underlying felony supporting a finding of culpability, to result from his actions.

The judge's instruction on general intent, to the extent that the jury could have understood general intent to be a reflex action, was error. The judge's instruction on specific intent, in that it did not emphasize that the defendant must have acted with purpose or have intended certain consequences, was not wholly illuminating.[12] The judge, however, properly and repeatedly instructed the jury on the elements of a joint venture, including that the Commonwealth had to prove that the defendant shared the intent of his coventurers to commit the underlying crime, and that "he intended for those crimes to occur." The judge explained that the Commonwealth had to prove that Gunter had the specific intent to commit the felony of armed assault in a dwelling, underlying the felony-murder charge, together with the specific intent to commit assault with a deadly weapon, the specified intended felony underlying the charge of armed assault in a dwelling. The judge, avoiding the defects that we pointed out in *Commonwealth* v. *Claudio*, 418 Mass. 103, 117 (1994), defined the term "felony" and instructed the jury that the defendant not only must have shared the intent of his coventurers to commit the specified felony, but also, in light of the felony of armed assault in a dwelling, must have known that the coventurers were armed. These instructions adequately stated that the Commonwealth had to prove the requisite state of mind to commit the underlying felony. In light of the jury instructions

---

[11]See *Commonwealth* v. *Sires*, 413 Mass. 292, 301 n.8 (1982) ("We see no need for a judge to refer to the defendant's *specific* intent to do something as an element of a crime. A reference to intent is sufficient." [Emphasis in original.])

[12]We acknowledge our endorsement of a similar instruction that specific intent is "a conscious act with the determination of the mind to do an act. It is contemplation rather than reflection and it must precede the act." *Commonwealth* v. *Nickerson*, 388 Mass. 246, 253-254 (1983). That instruction, like the one given by the judge in this case, is correct as far as it goes, but fails to capture the critical requirement that, in a specific intent crime, the defendant must intend that the particular consequences constituting the crime follow from his act or conduct.

as a whole, any error in the instruction on general intent and any ambiguity or confusion in the instruction on specific intent do not rise to the level of a substantial likelihood of a miscarriage of justice.

d. Gunter's fourth claimed instructional error was the judge's reference to the absence of a death penalty in Massachusetts, after he had read to the jury G. L. c. 265, § 1, "Murder committed . . . in the commission or attempted commission of a crime punishable with death or imprisonment for life, is murder in the first degree." The judge then said, "And I'll explain to you that despite the language of this statute, there is no punishment by death in this Commonwealth, and many aspects of the statute do not apply to this case, because the Commonwealth does not allege murder with deliberately premeditated malice aforethought or with extreme atrocity or cruelty."

"[S]entencing consequences of a verdict may not be submitted to the jury because the jury's function is to reach a verdict based solely on the evidence presented to them considered in light of the judge's charge to them concerning the applicable legal standards." *Commonwealth* v. *Ferreira*, 373 Mass. 116, 124 (1977). "To inform jurors of the consequences of their verdicts is apparently seen . . . as inviting result-oriented verdicts and possible deviation from the basic issues of a defendant's guilt or innocence." *Id.* at 125, quoting *Commonwealth* v. *Mutina*, 366 Mass. 810, 817 (1975).

We consider the judge's comment to have been ill-advised. The Commonwealth on appeal concedes as much. Nonetheless, in other cases we have concluded that a judge's comment on the absence of a death penalty in Massachusetts, when the judge's instruction like here was an attempt to remove extraneous considerations from interfering with the jury's deliberation, did not amount to reversible error. See *Commonwealth* v. *Medeiros*, 395 Mass. 336, 350-351 (1985); *Commonwealth* v. *Smallwood*, 379 Mass. 878, 883 (1980). Unlike in *Smallwood*, *supra* at 882, Gunter did not object to the judge's comment. The judge's isolated remark did not create a substantial likelihood of a miscarriage of justice.

7. Gunter also asks us to reduce or reverse his conviction of murder in the first degree pursuant to our extraordinary power of relief under G. L. c. 278, § 33E. He asks that we consider that his participation in the murder was minimal and peripheral, a more culpable coventurer was allowed to plead to a reduced

charge, the jury did not consider a defense of duress, and evidence against Gunter was the product of "liars." The record does not support these arguments.

We have raised an issue that we asked the parties to brief: "Whether, in light of the defendant's conviction as a joint venturer of murder in the first degree on a theory of felony-murder, where the underlying felony was armed assault in a dwelling with intent to commit a felony, G. L. c. 265, § 18A, the felony is sufficiently 'independent' of the murder itself to justify the first degree murder conviction." Evidence was presented that Gunter, Selby, and Edwards intended to assault two individuals (thieves) who were not found at the apartment where the victim was killed. Berry was an unfortunate, but apparently incidental, victim. Although Gunter's coventurer, Selby, was tried and convicted on premeditated murder, in addition to felony-murder, *Commonwealth* v. *Selby*, 426 Mass. 168, 168 (1997), the Commonwealth chose not to try Gunter on a premeditation theory of murder. We have affirmed felony-murder convictions wherein the underlying felony was G. L. c. 265, § 18A, but the issue we now discuss was not raised.[13] Having benefited from the briefs of the parties and the amici, we now conclude that, in the facts of this particular case, the underlying felony is sufficiently independent to support Gunter's felony-murder conviction.

We review some basic considerations of the common law felony-murder rule. "To make out a case of murder, the prosecutor need only establish that the defendant committed a homicide while engaged in the commission of a felony. . . . The effect of the felony-murder rule is to substitute the intent to commit the underlying felony for the malice aforethought required for murder. Thus, the rule is one of 'constructive malice.' " *Commonwealth* v. *Matchett*, 386 Mass. 492, 502 (1982), citing *Commonwealth* v. *Watkins*, 375 Mass. 472, 486-487 (1978). The rule has been severely criticized over the years due to the harsh outcome that results from employing the legal fiction of constructive malice, instead of proof of one of the other mental states normally required for a conviction of murder in the first degree, regardless of whether a death occurring during the com-

[13]See, e.g., *Commonwealth* v. *Bourgeois*, 404 Mass. 61, 64 (1989) (predicate felonies of armed assault in a dwelling house and armed robbery supporting murder conviction); *Commonwealth* v. *Hooks*, 375 Mass. 284, 291 (1978) (same).

mission of the felony was intentional, unintentional, or ac-
cidental. *Matchett, supra* at 503-504 n.12. Having been
abolished in some jurisdictions, the felony-murder rule has been
limited in application in many jurisdictions where it has been
retained, including our own. *Id.*[14]

In the *Matchett* case, we made passing reference to several
limitations on the felony-murder rule. See *Matchett, supra* at
505, quoting Model Penal Code § 201.2 comment 4C (Tenta-
tive Draft No. 9, 1959). Shortly thereafter we paid greater atten-
tion to one of those limitations. "[I]n felony-murder the conduct
which constitutes the felony must be 'separate from the acts of
personal violence which constitute a necessary part of the
homicide itself.' " *Commonwealth* v. *Quigley*, 391 Mass. 461,
466 (1984), cert. denied, 471 U.S. 1115 (1985), quoting W.R.
LaFave & A.W. Scott, Jr., Criminal Law § 71, at 559 (1972).
"[W]here the only felony committed [apart from the murder
itself] was the assault upon the victim which resulted in the
death of the victim, the assault merged with the killing and
could not be relied upon by the state as an ingredient of a
'felony murder.' " *Quigley, supra*, quoting *State* v. *Branch*, 244
Or. 97, 100 (1966). Were felonious assault sufficient to support
a conviction of murder in the first degree, the distinctions among
homicides would be rendered meaningless: all murders in the
second degree and manslaughters could be enhanced to murder
in the first degree based on the felony-murder theory with as-
sault as the underlying felony. See Comment, The Merger
Doctrine as a Limitation on the Felony-Murder Rule: A Balance
of Criminal Law Principles, 13 Wake Forest L. Rev. 369, 390
(1977). As a matter of logic as well as policy, if the rule relieves
the prosecution of proving malice, the substitute intent derived
from the felony should be clearly distinct from malice and not
merely a mental state that is less culpable than malice but is
similarly related to or inferred from the act of violence resulting
in homicide.

In *Commonwealth* v. *Claudio*, 418 Mass. 103, 109 (1994), we
held that an illegal breaking and entering a dwelling in the night-
time with the intent to commit an armed assault, G. L. c. 266,
§ 14, which then led to an assault culminating in a homicide,

---

[14]We established one such limitation on the rule in *Matchett*, in which we
held that felonious conduct must constitute sufficient danger to human life to
replace the malice element required for murder and support a felony-murder
conviction. *Commonwealth* v. *Matchett*, 386 Mass. 492, 507 (1982).

was sufficiently distinct "from armed assault in other circumstances, so as to justify treating a violation of that statute as predicating a charge of murder in the first degree by reason of felony-murder." In doing so, we joined the majority of other jurisdictions that had addressed that issue. *Id.*

The underlying felony here, G. L. c. 265, § 18A, is similar but not identical to the felony defined in G. L. c. 266, § 14. Among the differences is that the latter statute includes the element of "breaking" together with entry in a dwelling house, whereas the analogous element in the former statute is "entry" only. This difference is not critical. In *Claudio, supra* at 107-108, we relied on *People* v. *Miller,* 32 N.Y.2d 157, 160-161 (1973), the leading case to consider whether burglary with intent to assault merges with murder. The New York court in that case construed a statute, which like G. L. c. 265, § 18A, did not include a "breaking" element. See *People* v. *Miller, supra* at 159, citing N.Y. Penal Law § 140.20 (McKinney 1991) ("To establish the crime of burglary, it must be shown that the defendant 'knowingly enters or remains unlawfully in a building with intent to commit a crime therein' "). See also *State* v. *Miller,* 110 Ariz. 489, 490 (1974). Thus, consistent with our reliance in *Claudio, supra,* on *People* v. *Miller,* we do not consider the absence of the "breaking" element in G. L. c. 265, § 18A, a sufficient reason to merge armed assault in a dwelling with the murder itself.

General Laws c. 265, § 18A, differs from the burglary statutes in a more important way. Under both our burglary statute, G. L. c. 266, § 14, and the New York burglary statute, N.Y. Penal Law § 140.20, a felony is complete once a dwelling, whether broken into or not, is entered with felonious intent. Under each of these statutes, a jury can convict a defendant of burglary regardless of whether the defendant, after entry, commits any physical violence toward a person in the dwelling. In *People* v. *Miller, supra,* as in *Claudio,* but unlike this case, the defendant had committed a burglary that was independent of the acts which resulted in the homicide. The burglary in *People* v. *Miller, supra,* was committed with an intent to commit the assault that resulted in the homicide, but it was only the intent, not the assault, that needed to be proved in order to establish the burglary. Under G. L. c. 265, § 18A, by contrast, after an intruder has entered a dwelling, an assault must occur before the entry becomes a felony. If the acts constituting that assault

also cause the homicide, we could not conclude that the felony defined in G. L. c. 265, § 18A, is separate from the acts of personal violence that constitute a necessary part of the homicide itself. In such circumstances, the Commonwealth may only assert alternative theories of murder in the first degree.

Had the Commonwealth presented evidence only of the assault on Berry, we could not conclude that the assault was "independent." Here, the Commonwealth did far more than that. It presented evidence of assaults in the apartment against Gilbert, Madden, and McKenzie, in addition to the assault that took Berry's life. The jury could have found beyond a reasonable doubt that Gunter, through his coventurers, Selby and Edwards, assaulted Gilbert, Madden, and McKenzie in the apartment when Selby and Edwards brandished guns upon entering the apartment and when Edwards held those other three persons, as well as Berry, at gunpoint in the apartment kitchen. See *Commonwealth* v. *Slaney*, 345 Mass. 135, 138-141 (1962). The Commonwealth did not present separate indictments for these three assaults on Gilbert, Madden, and McKenzie. See note 16, *infra*. Nor did the murder indictment include these three independent assaults. That omission is not fatal to our inquiry: the statutory form of indictment is sufficient to charge murder by whatever means it may have been committed, including by means of felony-murder. See *Commonwealth* v. *Robertson*, 408 Mass. 747, 749 (1990); *Commonwealth* v. *White*, 353 Mass. 409, 412-413 (1967), cert. denied, 391 U.S. 968 (1968); *Commonwealth* v. *Jones*, 16 Mass. App Ct. 931 (1983). Absent specification of an independent felonious assault in the murder indictment or absent a separate indictment on an independent assault, however, it is advisable in the future that the prosecution seek jury questions specifying the independent felonious assault pursuant to G. L. c. 265, § 18A, that it contends supports a felony-murder conviction. In this case, although the jury's basis for their felony-murder conviction was not disclosed, Gunter himself did not raise this issue. Given the ample evidence presented by the Commonwealth of independent assaults on Gilbert, Madden, and McKenzie after Selby's and Edwards's entry while armed in a dwelling, we conclude that there was no substantial likelihood of a miscarriage of justice in the conviction of Gunter as a joint venturer. While there may well be circumstances wherein armed assault in a dwelling is not a suitably independent felony to support a conviction of

murder in the first degree, the facts and circumstances of this felony were sufficiently independent of the homicide itself to support Gunter's conviction of murder in the first degree.[15]

8. Finally, in addition to the murder conviction, the jury returned a guilty verdict on the underlying felony of armed assault in a dwelling.[16] We already have indicated that the assault on Berry was insufficiently independent of the murder and merged into the greater offense. A defendant's protection against multiple punishments for the same offense bars conviction and sentencing on a lesser included offense, even if ordered to run concurrently with the sentence for the greater offense. *Commonwealth* v. *Jones*, 382 Mass. 387, 395 (1981). The appropriate remedy, which the Commonwealth concedes, is to vacate both the conviction and the sentence on that felony. *Id.*

Even if Gunter's indictment on armed assault in a dwelling had identified Gilbert, Madden, and McKenzie as the persons assaulted in the apartment, conviction on such an indictment would be duplicative of the murder conviction, assuming, as we have in this opinion, that such assaults served as the underlying felony to support felony-murder.[17] We mention this issue, because it may appear paradoxical that a felony, which must be sufficiently independent of the murder to support a felony-murder conviction (here, the entry in a dwelling while armed and assaults on Gilbert, Madden, and McKenzie), then merges as a duplicative, lesser included offense of a defendant's convic-

---

[15]We noted in *Commonwealth* v. *Claudio*, 418 Mass. 103, 108 (1994), that, instead of delineating exactly which felonies give rise to application of the felony-murder rule, "we have considered on a case-by-case basis, and sometimes by reference to specific facts, whether a particular felony was . . . 'inherently dangerous to human life.' " *Id.*, quoting *Commonwealth* v. *Moran*, 387 Mass. 644, 651 (1982). Similarly, we shall review on a case-by-case basis and with reference to specific facts whether felonies are sufficiently independent of a killing to support a felony-murder conviction.

[16]The substantive text of the indictment for armed assault in a dwelling read: "Paul Gunter, on March 22, 1991, being armed with a certain dangerous weapon to wit: a handgun, did enter the dwelling house of another at Boston aforesaid, and while therein did assault Jack Barry, Jr. [*sic*], the younger of that name with intent to commit a felony, to wit: assault by means of dangerous weapon."

[17]It would have been possible for the Commonwealth to request that the grand jury return three separate indictments for the three separate assaults, in addition to the indictment for Berry's murder, and request that one of the three indictments on armed assault in a dwelling operate as the independent felony to support the felony-murder, while convicting on the other two indictments for armed assault in a dwelling.

tion on a greater offense (here, the murder of Berry). Analytically, once it is established that a felony is sufficiently independent to substitute legitimately for the malice element normally required for murder in the first degree, proof of that independent felony becomes essential for a conviction of felony-murder. When a murder conviction is based on a felony-murder theory, the underlying felony, whatever it may be, is always a lesser included offense and the conviction for that felony, in addition to the conviction of murder, is duplicative. *Commonwealth* v. *Mello*, 420 Mass. 375, 398 (1995).

Accordingly, the case is remanded to the Superior Court. The judgment and sentence on the armed assault in a dwelling conviction is to be vacated and the remaining convictions are affirmed.

*So ordered.*