Andrew W. **KILBURN**

v.

Michael T. **MALONEY**

No.  CIV.A.98–12156–RGS.

United States District Court, D. Massachusetts.

Aug. 1, 2005.

Thomas Dee, Attorney General's Office, Boston, MA, for Michael Maloney, Defendant.

Stephen B. Hrones, Hrones & Garrity, Boston, MA, for Andrew W. Kilburn, M.C.I. Cedar Junction, Plaintiff Pro Se.

Natalie S Monroe, Attorney General's Office, Boston, MA, for Michael Maloney, Defendant.

Susanne G. Reardon, Attorney General's Office, Boston, MA, for Larry E. Dubois, Defendant.

## MEMORANDUM AND ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

STEARNS, District Judge.

I have reviewed Magistrate Judge Dein's Report and Recommendation, the petitioner's lengthy objections and supporting materials, and the underlying decisions of the Supreme Judicial Court (SJC) in *Commonwealth v. Kilburn (I)*, 426 Mass. 31, 686 N.E.2d 961 (1997), and *Commonwealth v. Kilburn (II)*, 438 Mass. 356, 780 N.E.2d 1237 (2003). The most significant issue is whether the SJC's determination that the trial judge's error in failing to distinguish between two coterminous assaults, one of which could support petitioner's conviction of felony-murder, while the other could not because of the merger doctrine, gave rise to a substantial risk of a miscarriage of justice. On this and on those other issues properly before the court, I agree with the Magistrate Judge that the State court adjudications did not result in decisions contrary to or involving an unreasonable application of federal law

as decided by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). The Magistrate Judge correctly found that: (1) the sufficiency of the evidence standard applied by the SJC in assessing the evidence of the petitioner's knowledge and intent comported with *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); (2) that the merger doctrine claim was procedurally defaulted; [1] (3) that petitioner has shown neither cause and prejudice nor a fundamental miscarriage of justice; and (4) that the performance of petitioner's counsel conformed to the standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). I further agree that petitioner's due process argument regarding the alleged shift in position by the Commonwealth on appeal is foreclosed by the First Circuit's decision in *Gunter v. Maloney.* Petitioner's aim is at the quality of the evidence against him (he claims that its most incriminating aspects were fabricated by the police) and his disagreement with the Magistrate Judge over the extent to which *Gunter* is controlling in his case.[2] None of the objections persuade me that there is any error in the Magistrate Judge's analysis and conclusions.

### ORDER

For the foregoing reasons, the Magistrate Judge's Report and Recommendation is *ADOPTED,* and the petition is *DISMISSED* with prejudice.

SO ORDERED.

1. While I believe that the default is conclusive, I do not imply any disagreement with the Magistrate Judge's conclusion that the merger doctrine claim also fails on its merits. *See Commonwealth v. Gunter,* 427 Mass. 259, 692 N.E.2d 515 (1998), aff'd sub nom. *Gunter v. Maloney,* 291 F.3d 74 (1st Cir.2002).

2. Petitioner also invokes *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *United States v. Booker,* ⸺ U.S. ⸺, 125 S.Ct. 738, 160

### REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS

DEIN, United States Magistrate Judge.

## I. INTRODUCTION

The petitioner, Andrew Kilburn ("Kilburn" or the "defendant"), is presently serving a life sentence. He was convicted of murder in the first degree by reason of felony murder for the shooting death of Charles Laliberte ("Laliberte") in Laliberte's home on September 2, 1992. *Commonwealth v. Kilburn,* 426 Mass. 31, 31–32, 686 N.E.2d 961, 962 (1997) ("*Kilburn I*"); *Commonwealth v. Kilburn,* 438 Mass. 356, 356–57, 780 N.E.2d 1237, 1239 (2003) ("*Kilburn II*"). The underlying felony was an armed assault in a dwelling. *Kilburn I,* 426 Mass. at 31 n. 1, 686 N.E.2d at 962 n. 1. Kilburn drove the getaway car, and was not present for the actual shooting, which was done by a still unidentified man. *Id.* at 32–33, 686 N.E.2d at 962–63. Kilburn's conviction was affirmed by the Massachusetts Supreme Judicial Court ("SJC") on October 27, 1997. *Id.* at 32, 686 N.E.2d at 962.

Kilburn then filed a timely habeas petition with this court pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2254, et seq., on or about October 26, 1998. *Kilburn v. Maloney,* 164 F.Supp.2d 113, 115

L.Ed.2d 621 (2005). Any application that *Apprendi–Booker* might have to his petition was never raised before the State court (or the Magistrate Judge). To the extent that I understand petitioner's argument, it appears premised on a misunderstanding of constructive as opposed to actual malice in the context of felony-murder. *See Commonwealth v. Devlin,* 335 Mass. 555, 567, 141 N.E.2d 269 (1957).

(D.Mass.2001). The petition was subsequently stayed in order to allow him to seek review by the state courts of unexhausted claims, including whether the underlying felony of armed assault in a dwelling had merged into the crime of murder, thereby invalidating his felony murder conviction. Kilburn raised his unexhausted claims with the state courts by way of a motion for release from unlawful restraint pursuant to Mass. R.Crim. P. 30(a) ("Motion for Release"). That motion, and a motion for reconsideration, were denied by the trial court. Kilburn then sought leave to appeal from a single justice of the SJC.

The single justice allowed Kilburn to appeal two issues to the full bench pursuant to the "gatekeeper" provision of Mass. Gen. Laws ch. 278, § 33E. These issues were "(1) whether the defendant may be convicted of joint venture felony-murder when the acts constituting the predicate felony, armed assault in a dwelling with intent to commit a felony, G.L. c. 265, § 18A, also caused the death of the victim; and (2) whether the defendant waived this issue by failing to raise it in his direct appeal." *Kilburn II*, 438 Mass. at 357, 780 N.E.2d at 1239. The SJC concluded that the issue had been waived, and reviewed Kilburn's claims under a "substantial risk of miscarriage of justice" standard. *Id.* at 360, 780 N.E.2d at 1241–42.

The SJC analyzed the facts and concluded that there were at least two assaults committed against Laliberte, both of which "were encompassed within the Commonwealth's theory of the crime," although they had not been separately identified to the jury. *Id.* at 358, 780 N.E.2d at 1240. According to the SJC, the "first armed assault" occurred when the armed individual entered the apartment brandishing a gun and pushed the victim backward, thereby putting him in fear or apprehen-

sion of imminent bodily harm. *Id.* The second assault was the shooting, which took place shortly thereafter. *Id.* The SJC ruled that the first assault was not merged into the murder, while the second was merged. *Id.* at 359, 780 N.E.2d at 1240–41. The court also noted that there was a separate assault on another individual in the apartment, the only eyewitness Alex Loer ("Loer"), which would have been sufficient to sustain the felony murder conviction, although that theory was not presented at trial at all. *Id.* at 358 n. 3, 780 N.E.2d at 1240 n. 3.

The SJC concluded that the trial judge had erred in his instructions in failing to properly identify the underlying felony, and that the jury may inappropriately have based their "felony-murder conviction on an assault that merged with the fatal shooting." *Id.* at 361, 780 N.E.2d at 1242. The SJC further found that the error was prejudicial, and "might, in the proper circumstances, give rise to a substantial risk of a miscarriage of justice" because Kilburn may have been convicted of felony murder on the basis of a merged assault, *i.e.*, where there was no independent "felony" to support a "felony murder" conviction. *Id.* Nevertheless, the court concluded that its examination of the record did not leave it "with a serious doubt whether the result of the trial might have been different had the error not been made" and, consequently, ruled that "the defendant has failed to demonstrate that the error created a substantial risk of a miscarriage of justice." *Id.* at 362–63, 780 N.E.2d at 1242–43 (internal quotation omitted).

With the state court proceedings now fully exhausted, the stay issued by this court was lifted on January 24, 2003. (Docket No. 72). Kilburn's petition for a writ of habeas corpus (as amended), filed pursuant to 28 U.S.C. § 2254, raises the

following grounds: (1) whether the conviction for felony murder violated his due process rights in that there is insufficient evidence to support the conviction (including Kilburn's merger claim); (2) whether Kilburn's constitutional right to effective assistance of counsel was violated by trial and direct appellate counsel's "failure to object to the felony murder instruction on the basis of the merger defense;" and (3) whether his due process rights were violated by "the prosecution's changing its theory on appeal, resulting in a failure to present the underlying felony to the jury in connection with the felony murder charge." Memorandum of Decision and Order on Motions Defining the Scope of the Habeas Corpus Petition (Docket No. 86) at 13.[3] For the reasons detailed herein, and because this case is controlled in large part by *Gunter v. Maloney*, 291 F.3d 74 (1st Cir.2002), this court recommends to the District Judge to whom this case is assigned that the petition for a writ of habeas corpus be DENIED.

## II. *STATEMENT OF FACTS*[4]

### *The Underlying Crime*

The defendant, Andrew Kilburn, was indicted by a Suffolk County Grand Jury on September 30, 1992 for murder. App. Ex. 1 (Defendant's Brief) at p. 2 and appendix 1. The indictment was in the statutory form prescribed by Mass. Gen. Laws ch. 277, § 79, and read that:

Andrew W. Kilburn, on September 2, 1992, did assault and beat one Charles D.J. Laliberte, with intent to murder him, and by such assault and beating did kill and murder the said Charles D.J. Laliberte.

App. Ex. 1 at appendix 1. A jury trial was held beginning on April 7, 1993, Volterra, J. presiding. *Id.* at p. 2 and appendix 5. The defendant was represented by Earle C. Cooley, Esq. On April 16, 1993, the jury returned a verdict of guilty of first degree murder. *Id.* at p. 2 and appendix 9 (verdict slip). As detailed in its response to special questions, the jury based its guilty finding on felony murder, and rejected a finding of "deliberately premeditated [murder] with malice aforethought." *Id.*

The underlying facts of the crime are fairly straight-forward, and are detailed more fully in *Kilburn I* and *Kilburn II*. Briefly, on September 2, 1992, the victim, Charles Laliberte, was having lunch with a business associate, Alex Loer, at the victim's apartment in South Boston. *Kilburn I*, 426 Mass. at 32, 686 N.E.2d at 962. As the SJC described the events in the direct appeal:[5]

In response to a knock the victim opened the door and a still unidentified man forced his way into the apartment brandishing a gun. On entering, the gunman ordered both the victim and Loer to a bedroom located in the rear of the

---

**3.** On November 26, 2003, this court issued its Memorandum of Decision and Order on Motions Defining the Scope of the Habeas Corpus Petition (Docket No. 86) in response to a number of motions disputing the scope of the habeas petition following the stay. That Memorandum of Decision and Order also contains a detailed procedural history of this case, which shall be deemed incorporated herein by reference, and will not be repeated.

**4.** The Commonwealth filed a Supplemental Answer (Docket No. 8) containing pleadings

relevant to Kilburn's direct appeal, which will be cited as "App." The Commonwealth filed a Second Supplemental Appendix (Docket No. 90) containing pleadings relevant to Kilburn's Motion for Release, which will be cited as "Supp.App."

**5.** The state court's findings of fact are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). This presumption applies to factual determinations made both by the trial and appellate courts. *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir.2002).

apartment. Loer passed through the bedroom doorway first, and fell to his knees with his back facing the doorway. Shortly thereafter, Loer heard a gunshot, looked over his shoulder, and found the assailant gone and the victim slumped over on the floor of the bedroom. Loer then telephoned the police, and they arrived at the scene minutes later.

*Id.* at 32, 686 N.E.2d at 962–63. In addressing Kilburn's Motion for Release, the SJC expanded its description of the events as follows:

> Alex Loer, the only witness to the shooting, was visiting Laliberte when an assailant, brandishing a handgun, burst into the apartment, pushing Laliberte away from the doorway. When the gunman noticed Loer he first appeared confused, and then began to order both Loer and Laliberte about the apartment. After approximately one minute of seemingly random directions, the gunman ordered Loer into the bedroom. Five seconds later Loer heard the sound of a gunshot. When Loer looked over his shoulder Laliberte was dead, shot in the back of the head, and the gunman had departed.

*Kilburn II,* 438 Mass. at 357, 780 N.E.2d at 1239.

Another witness saw the gunman escaping into an automobile driven by another person. *Id.* at 357, 780 N.E.2d at 1240. Investigation revealed that Kilburn owned the automobile, and Kilburn subsequently admitted being present in his car when the incident occurred. *Id.* He also made several other incriminating statements. *Id.* Specifically, but without limitation, after being given his Miranda warnings, Kilburn "told the police that he had not realized that the gunman had shot Laliberte while in the apartment; they had just gone there

to 'do' Laliberte, and he 'should have never died.'" *Id.* at 357–58, 780 N.E.2d at 1240.

### The Direct Appeal

The defendant appealed his conviction as well as the trial court's denial of his Renewed Motion for a Required Finding of Not Guilty, or in the Alternative, for Reduction of the Finding of Guilty to a Lesser Included Offense, or for a New Trial. *See* App. Ex. 1, pp. 2–3. He was represented by new counsel, Roger A. Cox, Esq., on appeal. The SJC confirmed the conviction, rejecting Kilburn's contention that there was insufficient evidence to support a conviction for the predicate felony—armed assault in a dwelling—because the government had failed to satisfy the "knowledge" requirement of the crime. *Kilburn I,* 426 Mass. at 34, 686 N.E.2d at 963–64. Specifically, the court found that there was sufficient evidence for the jury to find that Kilburn knew that his accomplice was armed and that Kilburn knew that there was a substantial likelihood that his accomplice would commit the armed assault. *Id.* at 35, 686 N.E.2d at 964–65. The details of what constituted the "assault" that formed the basis of the predicate felony, however, were not at issue and the matter was not discussed. The SJC also rejected Kilburn's second argument, namely that improperly admitted evidence required a mistrial. *Id.* at 37–38, 686 N.E.2d at 966.

Kilburn then filed a timely habeas petition. *Kilburn v. Maloney,* 164 F.Supp.2d 113, 115 (D.Mass.2001). While that petition was pending, Kilburn, through new counsel, sought to stay the petition to enable him to raise in state court the issue whether the underlying felony had merged into the murder. The stay was allowed. *Id.* Kilburn pursued the issue in state court by filing his Motion for Release. *Id.* at 114. Following the denial of this Mo-

tion by the trial court and the SJC, the stay was lifted and the habeas petition was amended, as detailed above.

### The Merger Doctrine

■ "In Massachusetts, the felony-murder rule imposes criminal liability for homicide on all participants in a certain common criminal enterprise if death occurred in the course of that enterprise." *Paulding v. Allen*, 393 F.3d 280, 284 (1st Cir.2005) (internal citation and punctuation omitted). The rule "is based on the theory that the intent to commit the felony is equivalent to the malice aforethought required for murder." *Commonwealth v. Prater*, 431 Mass. 86, 95, 725 N.E.2d 233, 242 (2000) (internal citation and punctuation omitted). It is Kilburn's contention that "the necessary predicate felony, armed assault in a dwelling, G.L. c. 265, § 18A, merged with the murder itself." *Kilburn II*, 438 Mass. at 358, 780 N.E.2d at 1240 (internal footnote omitted). As the SJC explained:

> The doctrine of felony-murder provides that "the conduct which constitutes the felony must be 'separate from the acts of personal violence which constitute a *necessary* part of the homicide itself.' " Absent this requirement, the assault that precedes every killing would serve as the predicate for felony-murder in the first degree, and the distinction between degrees of murder would be lost. Whether a particular felony is sufficiently independent from a killing to support a felony-murder conviction is a question that defies categorical analysis; we therefore review claims of merger on a "case-by-case basis with reference to specific facts." In the case of an armed assault in a dwelling, merger occurs when "the acts constituting that assault also cause the homicide."

*Id.* at 359, 780 N.E.2d at 1240–41 (citations omitted). In Kilburn's case, the SJC determined that the undisputed facts established that there were two assaults on Laliberte. As the SJC concluded:

> The first armed assault on Laliberte occurred immediately after the gunman entered Laliberte's apartment. According to Loer's uncontested testimony, Laliberte opened the door for an individual who immediately brandished a gun and pushed the victim backward, thereby committing an armed assault in a dwelling. At this point, the gunman noticed Loer for the first time and (again according to Loer's uncontested testimony) stopped in confusion. At that time the elements of an assault, namely objectively menacing conduct intended to arouse fear or the apprehension of imminent bodily harm, see *Commonwealth v. Gorassi*, 432 Mass. 244, 247, 733 N.E.2d 106 (2000), had already been satisfied. After a short interlude, during which the gunman ordered both Loer and the victim about the apartment, the gunman shot the victim in the back of the head, thus violating [G.L. c. 265,] § 18A a second time.

*Id.* at 358, 780 N.E.2d at 1240 (emphasis added). According to the SJC, the first assault—the brandishing of a pistol with the intention of arousing fear—did not merge into the murder, because Laliberte did not die of fright and the acts causing the assault did not also cause the homicide. *Id.* at 359, 780 N.E.2d at 1241. However, the second assault—the act of shooting the victim—did merge with the murder. *Id.*

Kilburn contends that the SJC decision was the first time that the theory of two assaults was raised, in violation of his due process rights. Moreover, he contends that the Commonwealth changed its position on appeal, arguing that "the government at trial only argued that the predi-

cate felony was the assault that resulted in the victim's death" and that it changed its position on direct appeal by arguing that Loer had been the victim of the assault. *See* Pet. Mem.[6] at 6–7; Petition to Single Justice, Supp.App. Ex. 6, at 2. To address this claim, the history of the parties' positions must be reviewed.

### Identifying The "Assault" At Issue

In his closing, the prosecutor had argued in connection with the felony-murder charge:

> So, if they went to "do" him, and "do" meant to use a gun—to assault him; and his Honor will explain what assault means—to use a gun, to put Mr. Laliberte in fear, inside of his house, his dwelling, in order to do some other felony—to beat him up, threaten him, and assault him with a weapon—then that's an armed assault in a dwelling, an inherently dangerous crime; and it's punishable by certain terms that qualify it to be the underlying crime for what is called felony murder.

Transcript p. 8–65 included in Supp.App. Ex. 6. Nevertheless, no further details were provided, and there was no claim that Laliberte was the victim of two separate assaults. As the Commonwealth agrees, "[i]t is apparent from the prosecutor's opening statement and closing argument that the Commonwealth viewed this killing primarily as a deliberately premeditated murder and that the defendant had acted as a joint venturer in the planned execution." Supp.App. Ex. 7 at 5–6 (Common-wealth's Memorandum Opposing Defendant's Petition for Leave). Nevertheless, it is undisputed that to the extent that the government identified the conduct which formed the relevant assault at trial, it was an assault on the murder victim. *See* Motion for Release, Supp.App. Ex. 2 at pp. 4–5; *Kilburn II*, 438 Mass. at 358 n. 3, 780 N.E.2d at 1240 n. 3 (in addition to the evidence establishing an assault on the murder victim, the evidence also indicates an assault on Loer which "could also have constituted an independent predicate felony for a felony murder conviction, *had the Commonwealth chosen to present the theory at trial*") (emphasis added).

As part of the jury charge, "the judge correctly instructed the jury that, in order to find the defendant guilty of armed assault in a dwelling as a joint venturer, the jury had to find that the defendant shared the gunman's intent to enter a dwelling while armed and assault the victim with the intent to commit a felony" and "also correctly explained to the jury that the intended felony for the intent prong of the armed assault offense could be either assault and battery by means of a dangerous weapon, or assault by means of a dangerous weapon." *Kilburn II*, 438 Mass. at 359, n. 4, 780 N.E.2d at 1241 n. 4 (citations omitted). However, he did not instruct the jury as to the merger doctrine, and defense counsel failed to object. *Id.* at 359–60, 780 N.E.2d at 1241.[7] Similarly, the trial judge did not identify what conduct could constitute the "assault" neces-

---

**6.** The Petitioner, through counsel, filed "Petitioner Andrew Kilburn's Memorandum in Support of His Petition for Writ of Habeas Corpus" (Docket No. 87), which will be cited as "Pet. Mem." Kilburn then filed a pro se memorandum of the same title (Docket No. 88), which will be cited as "Pet. Supp. Mem." Petitioner also filed a pro se "Reply to Respondent's Opposition to Petition for Writ of Habeas Corpus" (Docket No. 94), which will be cited as "Pet. Reply."

**7.** As the SJC noted, while defense counsel did refer to cases which addressed the felony-murder merger doctrine, "the defendant concedes that the issue of merger was not properly raised at trial." *Id.* at 360 n. 6, 780 N.E.2d at 1241 n. 6.

sary for the predicate felony, and neither party requested such an instruction. *See id.* at 360 n. 5, 780 N.E.2d at 1241 n. 5. Kilburn's appellate counsel also did not raise a merger claim on his direct appeal. *Id.* at 360, 780 N.E.2d at 1241. Thus, the issue was first squarely presented in Kilburn's Motion for Release.

In its memorandum in opposition to the defendant's Motion for Release filed with the trial court, the Commonwealth did break down the actions of the shooter into two assaults, a theory subsequently adopted and expanded upon by the SJC. Thus the government argued not only was there an assault upon the victim, but the assailant's entry into a dwelling house while armed with a dangerous weapon was sufficiently distinct as to constitute the predicate felony for a felony-murder charge. Supp.App. Ex. 3 at p. 11 and cases cited. In addition, the Commonwealth argued that holding the occupants at gunpoint and ordering them around the living room before shooting the victim was sufficiently independent of the assault that resulted in the murder to support a finding of felony-murder. *Id.* at pp. 13–14.

In ruling on Kilburn's Motion for Release, the trial judge basically adopted the Commonwealth's arguments. *See* Supp. App. Ex. 5. The trial judge concluded that the entrance into the dwelling brandishing a gun and ordering the occupants around constituted a separate felony from the homicide. *Id.* at pp. 9–10. The trial judge did go further, however, and concluded that the "assault on the other occupant" was "distinct and independent from that of the victim," so that no merger occurred. *Id.* at p. 10. He did not mention the assault on the victim that took place simultaneously with the assault on Loer (the "other occupant").

Kilburn filed a petition with a Single Justice of the SJC to allow an appeal from the denial of his Motion for Release. *See* Supp.App. Ex. 6. Therein he argued that "[t]he Government tried the Petitioner on the theory that the felony supporting the felony murder was the assault on the murder victim. It cannot now change its theory of the case on appeal and argue the jury *could have found* the felony was an assault on someone other than the murder victim." *Id.* at p. 2 (emphasis in original).

In opposing the defendant's petition to the Single Justice, the Commonwealth again argued that there was a separate felonious assault when the shooter pushed his way into the apartment brandishing a gun and holding both Loer and Laliberte at gunpoint. As the Commonwealth argued:

> The evidence established that the gunman committed an armed assault in a dwelling when he entered the dwelling brandishing the gun and repeatedly ordered both the victim and Loer around the apartment at gunpoint, terrifying both Loer and the victim. This conduct is "separate from the acts of personal violence which constitute a *necessary* part of the homicide itself." [*Commonwealth v. Quigley*, 391 Mass. 461, 466, 462 N.E.2d 92 (1984) ].

Supp.App. Ex. 7 at pp. 17–18 (additional citations omitted). In recognition of the trial judge's decision denying Kilburn's Motion for Release, the government also asserted that "as the motion judge properly concluded," "the assault on Loer was sufficiently independent of the shooting of the victim to warrant the defendant's conviction of murder in the first degree." *Id.* at p. 19.

The Single Justice allowed Kilburn's petition for leave to appeal the denial of his Motion for Release. Supp.App. Ex. 8. The Commonwealth's position on appeal to the SJC was consistent with the positions it had taken in all of the briefings relating to

that Motion. Thus, the government argued:

> The evidence established that the gunman committed an armed assault in a dwelling on both Laliberte and Loer when he entered the dwelling brandishing the gun and repeatedly ordered both men around the apartment at gunpoint, terrifying them. This conduct is "separate from the acts of personal violence which constitute a necessary part of the homicide itself."

Supp.App. Ex. 10 at p. 29 (citation omitted).

> The gunman did not shoot LaLiberte (sic) until he had moved both Loer and LaLiberte, at gunpoint, through the dwelling and into the bedroom where Loer collapsed on his hands and knees .... As the felony of armed assault in a dwelling, on both Laliberte and Loer, had been completed before the gunman committed the lethal act of firing a bullet into the back of Laliberte's head, the felony did not merge into LaLiberte's murder and was sufficiently independent to support the defendant's conviction of murder in the first degree.

*Id.* at p. 31. The Commonwealth further argued in support of a finding of felony-murder, that the assault on Loer "by itself warranted submission of the case to the jury on the theory of felony-murder" and that the motion judge "properly concluded" that "the armed assault on Loer was sufficiently independent of the shooting of the victim to warrant the defendant's conviction of murder in the first degree." *Id.* at pp. 32–34.

As detailed above, in its ruling the SJC relied on the "first armed assault on Laliberte," which "occurred immediately after the gunman entered Laliberte's apartment," in concluding that there was no merger. *Kilburn II,* 438 Mass. at 358, 780 N.E.2d at 1240. The court recognized that

the second assault on Laliberte, *i.e.,* the shooting, was merged, and that the trial judge had not distinguished between the two when charging the jury on felony-murder. *Id.* at 359–60, 780 N.E.2d at 1241. Thus, the court was "unable to determine whether the jury found that the predicate felony for the felony-murder was the first assault on Laliberte, the second assault on Laliberte, or both." *Id.* at 360, 780 N.E.2d at 1241.

Nevertheless, the SJC affirmed the conviction, finding that "if the record in this case conclusively establishes the existence of the first, unmerged, assault on the victim, then we cannot say that the judge's error would have had a material effect on the trial." *Id.* at 362, 780 N.E.2d at 1242–43. Since Loer was the only eyewitness, the jury found the defendant guilty based on Loer's testimony, and since Loer's undisputed testimony "conclusively establishes the existence of the first assault," the court was "able to state with certainty that, had the judge properly distinguished between the two assaults on Laliberte in his felony-murder instructions, the jury would have convicted the defendant of felony-murder on the basis of the first, unmerged violation of § 18A." *Id.* at 362, 780 N.E.2d at 1243.

Further facts will be addressed below where appropriate.

## III. *DISCUSSION*

### A. *Standard of Review—Habeas Petition—Generally*

The standard of review to be applied to Kilburn's habeas corpus petition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under this standard, a federal habeas court may not grant a writ of habeas corpus unless the underlying state court adjudication

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As the United States Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts .... The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.

*Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). An "unreasonable application is different from an incorrect one." *Id.* In order to reach the level of "unreasonable," "some increment of incorrectness beyond error is required." *McCambridge v. Hall,* 303 F.3d 24, 36 (1st Cir.2002) (en banc) (internal citation and quotation omitted). This increment "need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *Id.* Thus, a habeas petitioner "must do more than merely identify an incorrect result." *Jackson v. Coalter,* 337 F.3d 74, 81 (1st Cir.2003). In short, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000).

**B.** *Ground One: Sufficiency of the Evidence*

**1.** *The Requisite Intent*

■ Kilburn contends that there was insufficient evidence to establish that he had the requisite knowledge or intent to be liable as a joint venturer in the armed assault/felonymurder. Pet. Supp. Mem. at 2–5. This claim was addressed and rejected by the SJC in Kilburn's direct appeal. This court finds that the SJC's decision was not contrary to nor an unreasonable application of clearly established Federal law as determined by the Supreme Court.

■ The SJC reviewed Kilburn's trial to "determine whether the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged." *Kilburn I,* 426 Mass. at 33, 686 N.E.2d at 963 (quoting *Commonwealth v. Campbell,* 378 Mass. 680, 686, 393 N.E.2d 820, 825 (1979)). As the SJC held, to establish liability as a "joint venturer," the Commonwealth must, *inter alia,* establish that the defendant was present at the scene "with knowledge that another intends to commit the crime ...." *Kilburn I,* 426 Mass. at 34, 686 N.E.2d at 963–64. "To satisfy this requirement in a case where armed assault in a dwelling is the underlying felony, the Commonwealth must first prove that the defendant knew that his accomplice was armed" and must then "demonstrate that the defendant knew that there was a 'substantial likelihood' that his accomplice would commit the armed assault." *Id.* at 34, 686 N.E.2d at 964. The SJC concluded that there was enough circumstantial evidence to meet both prongs of the knowledge requirement, including, without limitation, Kil-

burn's statement that "*the* gun just went off," which implied prior knowledge that the assailant had a gun with him; the defendant's parking of his car in a nearby, but not readily obvious, location, indicating the necessary intent to assist in the armed assault in the dwelling; and his quick flight from the scene with the assailant, evidencing joint participation. *Id.* at 35–37, 686 N.E.2d at 964–66. *See also id.* at n. 7. These facts, along with other statements of the defendant, such as "*we* went to 'do' [the victim] but he wasn't supposed to be killed," provided sufficient circumstantial evidence to "allow a jury reasonably to infer that the defendant possessed the required intent to commit armed assault in a dwelling." *Id.* at 37 n. 9, 686 N.E.2d at 965 n. 9.

The Supreme Court standard for sufficiency of evidence claims is defined in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). There, the Supreme Court held that, in connection with a habeas petition under 28 U.S.C. § 2254, a petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324, 99 S.Ct. at 2791–92. The standard of review applied by the SJC in *Kilburn I* to Kilburn's sufficiency of the evidence claim is substantially the same as that set forth in *Jackson. See Hurtado v. Tucker,* 245 F.3d 7, 13 (1st Cir.2001). Since the SJC "applied the correct standard by articulating the standard as set forth in *Jackson,*" the state court decision is not "contrary to" clearly established federal law. *Id.* at 15. Therefore, this court must analyze whether it "constitutes an unreasonable application of clearly established Supreme Court case law." *Id.* at 15 (citation omitted). This court finds that it does not.

In *Hurtado,* the First Circuit suggested the following guidelines as to some, but not all, of the principles in an insufficiency-of-the-evidence case to be used in making the evaluation of "objective unreasonableness" under § 2254(d)(1):

(1) The *focus of the inquiry is on the* state court decision;

(2) Even with the deference due by statute to the state court's determinations, the federal habeas court must itself look to "the totality of the evidence" in evaluating the state court's decision;

(3) The failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable; however, the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable;

(4) The failure of a state court to give appropriate weight to all of the evidence may mean that its conclusion is objectively unreasonable; and

(5) The absence of cases of conviction precisely parallel on their facts does not, by itself, establish objective unreasonableness.

*Id.* at 18. Applying these standards to the instant case, it is clear that "[t]he state court directly addressed the point at issue—sufficiency of the evidence—after its own survey of the entire record. It did not ignore material evidence or a key argument made by defendant. Its articulated reasons went to the conclusions it reached." *Id.* Based on the record presented, "it was not objectively unreasonable for the state court to conclude that a rational jury could convict [Kilburn]." *Id.* at 19. Consequently, Kilburn's challenge to the sufficiency of the evidence as to the requisite knowledge and intent does not support the allowance of a habeas petition.

### 2. *Merger of the Predicate Felony*

It is Kilburn's contention that there is insufficient evidence to sustain his conviction because the predicate felony merged into the felony murder. As a result, there was no independent felony to form the basis of the felony-murder conviction. Both because this claim has been procedurally defaulted and because this claim fails on the merits, this argument does not support the allowance of the habeas petition.

### a. *Procedural Default*

The SJC, in *Kilburn II*, concluded that Kilburn had twice waived his claim that the predicate felony was not sufficiently independent from the killing to support a felony-murder conviction. Thus, no objection had been made to the instructions to the jury and the issue had not been raised in his direct appeal. *Kilburn II*, 438 Mass. at 360, 780 N.E.2d at 1241. As a result, the SJC "examine[d] the defendant's case solely to ensure that the judge's error did not give rise to a substantial risk of a miscarriage of justice." *Id.* Because the state court proceeded on an independent state grounds—waiver—this court cannot review the merits of Kilburn's claim.

■ "A finding by a state court that a defendant procedurally defaulted a claim bars federal habeas corpus relief on that claim unless the defendant as a petitioner shows either cause for the default and prejudice from the claimed violation of federal law, or that a fundamental miscarriage of justice will result if the claim is not considered." *Gunter v. Maloney*, 291 F.3d at 78 (citing *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). The doctrine of procedural default arises out of "the longstanding rule that federal courts do not review state court decisions which rest on 'independent and adequate state grounds.'

Such independent and adequate state grounds exist where 'the state court declined to hear [the federal claims] because the prisoner failed to meet a state procedural requirement.' In such a case, 'considerations of comity and federalism bar the federal court's review.' " *Simpson v. Matesanz*, 175 F.3d 200, 205–06 (1st Cir. 1999) (internal citations and punctuation omitted), *cert. denied*, 528 U.S. 1082, 120 S.Ct. 803, 145 L.Ed.2d 677 (2000). "A procedurally defaulted claim may, however, be resurrected if the last state court granting review addresses a federal claim on its merits, thereby waiving the default." *Manisy v. Maloney*, 283 F.Supp.2d 307, 311 (D.Mass.2003).

In Massachusetts, the rule that "a claim not raised is waived" is regularly enforced and "firmly established." *Gunter v. Maloney*, 291 F.3d at 79 and cases cited. It is equally well-established that the state appellate court's decision to review a case under a "miscarriage of justice" standard following a failure to object does not waive the need for a contemporaneous objection, and does not "create independent rights in habeas petitioners." *Id.* at 79–80, and cases cited. *Accord Burks v. Dubois*, 55 F.3d 712, 716 n. 2 (1st Cir.1995).

■ In the instant case, it is clear that the SJC did not waive the procedural default, but, rather engaged only in a "discretionary, and necessarily cursory, review under a 'miscarriage of justice' analysis[.]" *Manisy v. Maloney*, 283 F.Supp.2d at 312, and cases cited. *See Kilburn II*, 438 Mass. at 363, 780 N.E.2d at 1243 (court concludes that "the defendant has failed to demonstrate that the error created a substantial risk of a miscarriage of justice"). Moreover, the SJC analyzed the merger issues solely under state law—there is no reference to federal law. *See id.* Under such circumstances, the procedural default rule was not waived. *Manisy v. Maloney*,

283 F.Supp.2d at 312–13 and cases cited. Where, as here, the state court declined to hear the merits of the claim because Kilburn failed to object at trial, the state court decision is "said to rest on independent and adequate state procedural grounds," and this federal court cannot "review claims the state courts never had a proper chance to consider." *Brewer v. Marshall*, 119 F.3d 993, 999 (1st Cir.1997).

### b. *Exceptions to the Procedural Default Rule*

■■■ In the event of a procedural default, federal habeas review nevertheless is available if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 750, 111 S.Ct. at 2565. Kilburn does not meet these requirements.

#### *Cause*

■■■ "In order to establish cause for the default, petitioner must demonstrate 'that some objective factor external to the defense impeded [defense] counsel's efforts to comply with the State's procedural rule." *Magee v. Harshbarger*, 16 F.3d 469, 471 (1st Cir.1994) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Here, there was no external factor which precluded trial counsel from complying with the requirement that timely objection be made. Similarly, appellate counsel did not raise the issue on direct appeal even though nothing prevented him from doing so if he felt it was meritorious. "The merger doctrine argument in felony murder cases is not a new one" and was "clearly viable in Massachusetts." *Gunter v. Maloney*, 291 F.3d at 82 n. 2. Thus, "[t]here was no

external impediment imposed by the state which caused counsel not to raise the merger doctrine argument." *Id.*

■■■ Ineffective assistance of counsel may constitute "cause" for failing to object at trial. *See id.* at 81. However, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. at 486–87, 106 S.Ct. at 2644. "So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*," 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant "bear[s] the risk of attorney error that results in a procedural default." *Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645. The instant record does not support a finding of ineffective assistance of counsel.

#### *Ineffective Assistance of Counsel*

The federal standard for ineffective assistance of counsel as set forth in *Strickland v. Washington* is as follows:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064.[8] In evaluating a claim of "prejudice," "[t]he question is not whether the defendant would more likely than not have received a different verdict,"' but whether " 'he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.' " *Strickler v. Greene,* 527 U.S. 263, 289–90, 119 S.Ct. 1936, 1952, 144 L.Ed.2d 286 (1999) (quoting *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995)).

Kilburn argues strenuously and repeatedly that, in light of the SJC's conclusion that he may have been convicted on the basis of a merged felony, failure to object to the jury charge was virtually *per se* ineffective assistance of counsel. While superficially attractive, this argument fails because under *any* analysis of the *undisputed* facts surrounding the shooting, there was a separate armed assault in a dwelling which did not merge into the shooting itself.[9] Thus, had Kilburn's trial counsel proposed a jury instruction on the merger doctrine, or objected to the lack of such an instruction, the Commonwealth would merely have emphasized the armed assault which had taken place against Laliberte and/or Loer when the armed gunman forced his way into the apartment brandishing his gun. "At that time the elements of an assault, namely objectively menacing conduct intended to arouse fear or the apprehension of imminent bodily harm had already been satisfied." *Kilburn II,* 438 Mass. at 358, 780 N.E.2d at 1240 (internal citation omitted). There was only one witness to the events surrounding the shooting and the inescapable conclusion from that witness' testimony was the existence of an independent felony. The record does not support the conclusion that counsel, who focused on Kilburn's intent and role in the relevant events—which *were* in dispute—"made errors so serious" that he was "not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" by not drawing the jury's attention to the chilling circumstances of the shooting. Such an emphasis would have run the risk of engendering even more sympathy for the victim and innocent bystander.[10] *See Genius v. Pepe,* 147 F.3d 64, 66 (1st Cir.1998) ("counsel's judgments in formulating the defense strategy are entitled to substantial deference").

*Prejudice*

■ Moreover, the conduct of counsel did not prejudice the defense. *See Stephens v. Hall,* 294 F.3d 210, 217–18 (1st Cir.2002) (court may rely on lack of prejudice, instead of counsel's performance, in reviewing claim of ineffective assistance of counsel).[11] "[A]n error generally is considered prejudicial if there is a strong possi-

**8.** This standard applies to assessing the effectiveness of appellate counsel as well. *United States v. Cook,* 45 F.3d 388, 392 (10th Cir. 1995) and cases cited.

**9.** This point is addressed further *infra* in connection with this court's analysis of *Gunter v. Maloney,* 291 F.3d 74, a case involving substantially identical facts.

**10.** Nor does the record support a finding of ineffective assistance of counsel on the part of appellate counsel. In the absence of an objection by trial counsel appellate counsel could, at most, have obtained review under a miscarriage of justice standard—the same standard applied by the SJC in *Kilburn II.* The defendant has offered no reason to support the conclusion that the application of this standard on direct appeal would have had a different outcome.

**11.** In the instant case, the "prejudice" necessary to find ineffective assistance of counsel is the same as the "prejudice" needed to circumvent the procedural default rule. Consequently, the issue will only be addressed once.

bility that it affected the outcome of the trial." *Ouber v. Guarino*, 293 F.3d 19, 33 (1st Cir.2002). "This is a normally difficult endeavor" and the court "must consider, on whole-record review, whether the trial might have ended differently absent the lawyer's blunder." *Id.* In light of the undisputed nature of Loer's testimony, this court cannot conclude that there was prejudice to Kilburn, since the facts clearly establish an independent felony. *See, e.g., Commonwealth v. Claudio*, 418 Mass. 103, 104, 634 N.E.2d 902, 904 (1994) ("unlawful breaking and entering into a dwelling in the night time, with intent to commit an armed assault on a lawful occupant of the dwelling, which is followed by an actual assault [can] serve as the predicate for a conviction of murder in the first degree under the felony-murder rule"); *Commonwealth v. Gruning*, 46 Mass.App.Ct. 842, 847–48, 710 N.E.2d 621, 625 (1999) and cases cited (describing cases where no merger was found due to the existence of a number of assaults which preceded a homicide). This is not a situation where there is "grave doubt" as to whether the defendant would have been convicted if the appropriate instruction had been given. *Compare Evanchyk v. Stewart*, 340 F.3d 933, 941–42 (9th Cir.2003) (where jury found co-defendants did not have an intent to kill, court could not assume that incorrect instruction on the need to find an intent to kill on the part of another defendant was a harmless error). Here, since the finding of an independent felony was inescapable, there was no prejudice. *See Commonwealth v. Azar*, 435 Mass. 675, 688, 760 N.E.2d 1224, 1234 (2002) ("a new trial is unnecessary where the presence of malice, as it is correctly understood, can be 'ineluctably inferred' from the evidence") (citation omitted).

### Miscarriage of Justice

Finally, "[e]ven absent a showing of cause and prejudice, a federal court exercising its habeas powers should nonetheless overlook a procedural default and hear a barred constitutional claim on the merits if its failure to do so would result in a fundamental miscarriage of justice." *Burks v. Dubois*, 55 F.3d at 717. As the *Burks* court explained:

> This is a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence .... To be sure, a habeas petitioner need not prove his innocence beyond all doubt in order to reach the safe haven of the miscarriage exception: it suffices if the petitioner can show a probability that a reasonable jury would not have convicted but for the constitutional violation.

*Id.* at 717–18 (internal citations omitted).

In the instance case, Kilburn does not claim that he is "actually innocent." Rather, his claim is that he was convicted of a crime which does not exist because of the merged felony. However, as detailed above, in view of the inescapable conclusion that an independent felony had taken place, Kilburn's argument must fail. Consequently, the habeas petition should be denied.

### c. The Merits of the Merged Felony Argument

■ Assuming, arguendo, that there was no procedural default of the merger argument, a review of the merits of his claim establishes that Kilburn's conviction does not result in a violation of his constitutional rights. Consequently, his habeas petition should be denied.

Kilburn contends that his constitutional rights were violated because he was never made aware of the charges against him, and that he was convicted on the basis of a scenario which was not presented to the

jury. These arguments are legally and/or factually unsupported.

Kilburn's indictment for murder was in the statutory form prescribed by Mass. Gen. Laws ch. 277, § 79. It is well established in the Commonwealth of Massachusetts that this form of indictment "is an indictment for murder in the first degree that encompasses all three theories of murder in the first degree" including felony-murder, deliberate premeditation, or extreme atrocity or cruelty. *Commonwealth v. DePace*, 442 Mass. 739, 743–744, 816 N.E.2d 1215, 1218–19 (2004); *Commonwealth v. Gunter*, 427 Mass. 259, 274, 692 N.E.2d 515, 526 (1998) ("the statutory form of indictment is sufficient to charge murder by whatever means it may have been committed, including by means of felony-murder.").

The fact that the Commonwealth was proceeding on both felony-murder and premeditated murder theories was made clear throughout the trial. *See, e.g.*, Kilburn's Motion for Release at 4–5 (included in Supp.App. Ex. 6) (acknowledging that both in his opening and in his closing the prosecutor argued that the assault on the murder victim was the basis for the felony-murder conviction). The special verdict form questioned whether the defendant was guilty of murder on the basis of "deliberately premeditated with malice aforethought" or "felony murder." (Verdict Slip included in Supp.App. Ex. 6). This is not a case where the defendant was unaware that he was being called upon to defend a felony-murder charge. *Compare Sheppard v. Rees*, 909 F.2d 1234, 1236–37 (9th Cir.1989) (Sixth Amendment violation requiring reversal of conviction where felony murder theory never raised directly or indirectly until after both sides had rested, and jury instructions had been agreed upon; defendant had no notice he was defending a felony murder charge). Rather, the record supports the SJC's conclusion that Kilburn was "given adequate notice of the charges against him and the potential theories on which the Commonwealth might proceed." *Kilburn II*, 438 Mass. at 363, 780 N.E.2d at 1243.

It certainly may be argued that Kilburn did not know which "assault" would be relied on to form the predicate felony. However, the First Circuit, in *Gunter v. Maloney*, 291 F.3d 74, has already determined that such a circumstance does not rise to the level of a constitutional violation.

In *Gunter* the petitioner, Paul Gunter, was convicted of felony murder and related charges. The underlying felony was assault with a dangerous weapon in a dwelling house, Mass. Gen. Laws ch. 265, § 18A. *Commonwealth v. Gunter*, 427 Mass. at 260, 692 N.E.2d at 518. Like Kilburn, Gunter drove the get-away car, and was not present when his colleagues went into an apartment looking for some thieves who had stolen their drugs, mistakenly believing the thieves would be present. *Id.* at 261, 692 N.E.2d at 518–19. They entered the apartment and held four innocent people, including the eventual murder victim, at gunpoint. *Id.* On their way out, one of the intruders shot and killed one of the bystanders as a warning. *Id.* Gunter knew that his cohorts intended to kill or hurt the thieves if they had found them in the apartment. *Id.* at 262, 692 N.E.2d at 519. The case was tried with the underlying felony being that the murder victim had been assaulted, and that the assault on the murder victim was the felony which supported the felony murder. *See Gunter v. Maloney*, 291 F.3d at 77.

Gunter's counsel did not raise the merger doctrine either at trial or on appeal. *Id.* It was raised for the first time by the SJC itself on Gunter's direct appeal. *Id.* Consequently, the SJC found that the is-

sue had been procedurally defaulted, and reviewed the case under a miscarriage of justice standard under Mass. Gen. Laws ch. 278, § 33E. *Id.*

The SJC on the direct appeal found that under the merger doctrine, the assault on the murder victim was merged with the subsequent killing. *Id.*[12] Nevertheless, the SJC concluded that there was an alternate theory under which the defendant could have been convicted, namely on the basis of the assaults on the bystanders which occurred when they were being held at gunpoint. *Id.* The SJC consequently affirmed the conviction, finding no miscarriage of justice, even though this new analysis of the facts had not been presented to the jury or argued below. *Id.* After this SJC decision, Gunter moved for a rehearing before the SJC, raising for the first time an ineffective assistance of counsel claim for failure to present the merger doctrine argument, and arguing that because his conviction may have been based on a merged felony, he was deprived of due process of law. *Id.* at 77–78. This motion was denied by the SJC without opinion. *Id.* at 77.

Gunter filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, which was allowed by Judge Rya Zobel. *Id.* at 78. The First Circuit reversed, rejecting many of the arguments which Kilburn has raised in his petition. *Id.*[13] at 83.

As an initial matter, the First Circuit denied Gunter's habeas petition because the merger issue had been procedurally defaulted. As the Court held:

> The SJC's conclusion was that even if the Commonwealth's original prosecution theory was defective, petitioner procedurally defaulted the claim and would not be saved from his default by a miscarriage of justice finding. There was no miscarriage of justice because Gunter was, on the evidence, guilty of felony murder, even had the indictment and instructions specified the correct theory. The SJC's ruling amounted to nothing more than a decision that Gunter would not be absolved from his procedural default under its miscarriage of justice review.

*Id.* at 79. The fact that the SJC reviewed the decision under a miscarriage of justice standard did not waive the procedural default. *Id.* at 79–80. Since, as the SJC concluded, there was no cause for the default and actual prejudice, nor was there a fundamental miscarriage of justice, the SJC decision would not be reviewed. *Id.* at 81. As detailed above, this same procedural default analysis mandates the denial of Kilburn's petition as well.

The First Circuit also closed any other avenue of habeas relief. As the *Gunter* Court held, even assuming Gunter could pursue an ineffective assistance of counsel

---

12. This court finds the facts of *Gunter* indistinguishable from the instant case and would find that, pursuant to *Gunter*, the first assault on Laliberte when the armed assailant broke into the house was also merged into the murder. Nevertheless, by ruling otherwise in *Kilburn II*, the SJC at most committed an error of State law which would not appropriately be the subject of a habeas petition. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991), and cases cited. Moreover, as *Gunter* teaches, the fact that there was an independent assault on

Loer supports the felony murder conviction, even though that theory was not presented to the jury.

13. A copy of Judge Zobel's decision, *Gunter v. Maloney*, No. 99–11125–RWZ, slip op. (D.Mass. Aug. 23, 2001), can be found in Supp.App. Ex. 6. Kilburn relied heavily on Judge Zobel's decision in support of his Motion for Release. In view of the First Circuit's decision, however, Kilburn's claims must fail.

claim,[14] and assuming "that there was sufficient cause for and prejudice from the procedural default, and that a state's discretionary miscarriage of justice review may be subject to some form of constitutional constraint in these odd circumstances, Gunter still has no habeas-worthy constitutional claim." *Id.* at 82–83.

In *Gunter* (as in Kilburn's case), there was "no serious question of fair notice to the defendant of the crimes involved" either under the felony-murder theory propounded by the SJC or the theory advanced at trial since "the statutory form of indictment was all that was required as to notice" and proof of the assault and the facts surrounding the assault "was part of the Commonwealth's case all along, and the evidence of those assaults were produced before the jury." *Id.* at 83.[15] The fact that the jury instructions did not require the jurors to find assault on the appropriate victim was not a basis for habeas relief. *Id.* Quoting from *Stewart v. Coalter*, 48 F.3d 610, 617 (1st Cir.1995), the *Gunter* court concluded it was not "part of the office of habeas corpus to release a prisoner whose 'defense' in seeking the

writ was that he had committed murder but only on a theory not properly presented to the jury." 291 F.3d at 83. Similarly, in the instant case, there are no grounds for habeas relief where, based on the same facts as were presented to the jury, but focusing on the effect of those facts on Loer instead of Laliberte, Kilburn's liability for felony murder would be inescapable. For these reasons as well, Kilburn's petition for habeas relief should be denied.[16]

## C. *Ground Two: Ineffective Assistance of Counsel*

■ Kilburn's second ground for relief is that he was denied his Sixth Amendment right to be represented by competent counsel, since there was no objection to the jury charge which allowed a merged predicate felony to provide the basis for the felony murder conviction. Moreover, Kilburn contends that because the SJC did not apply the standard for effective assistance of counsel set forth in *Strickland v. Washington*, but rather applied a "miscarriage of justice" standard set forth in Mass. Gen. Laws ch. 278, § 33E, he is

**14.** Unlike Kilburn, Gunter failed to raise the ineffective assistance of counsel claim by way of a motion for a new trial and it was, therefore, disputed as to whether that claim had been exhausted. *Id.* at 81–82. Nevertheless, to avoid "further, hopeless litigation," the court briefly addressed the merits of the ineffective assistance of counsel claim in a footnote and concluded that it was "doubtful that the *Strickland* standard can be met so that ineffective assistance would constitute cause for the procedural default" since "the mere fact that counsel failed to recognize the factual or legal basis for a claim ... does not constitute cause for a procedural default." *Id.* at 82 n. 2 (citation omitted).

**15.** Gunter was also indicted for assault in a dwelling house with a dangerous weapon, in which the murder victim was identified as the victim. *See Commonwealth v. Gunter*, 427 Mass. at 275, 692 N.E.2d at 527. Since the

bystanders were not named in the assault indictment, *id.*, the fact that there was an assault indictment did not give Gunter any more notice of the predicate felony than Kilburn had. Kilburn cannot deny that he understood that the underlying felony for the felony-murder charge was armed assault in a dwelling. Rather, Kilburn, like Gunter, challenges the lack of identification of the victim of the predicate assault.

**16.** The *Gunter* Court also squarely rejected the argument raised here by Kilburn that the SJC in effect had rendered "its own verdict of guilty on a new theory." 291 F.3d at 80. Rather, the First Circuit held, the SJC had "left intact an existing jury verdict, to which [the defendant] had preserved no valid objection, because after reviewing the whole record it concluded that justice had been done." *Id.* at 80–81.

entitled to a de novo review on the merits. Pet. Mem. at 1. While much of this claim has been discussed previously, the standard of review dispute raises a new issue which will be addressed briefly.

In light of the lack of objection to the jury charge, either at trial or on direct appeal, the SJC examined the case "solely to ensure that the judge's error did not give rise to a substantial risk of a miscarriage of justice." *Kilburn II,* 438 Mass. at 360, 780 N.E.2d at 1241. With respect to Kilburn's claim of ineffective assistance of counsel, the SJC held that "every waived claim can be couched in ineffectiveness terms. Were we to permit a defendant to resurrect a waived claim simply by alleging that his counsel was ineffective, the waiver doctrine itself, a crucial component of our legal system, would quickly become meaningless. We therefore analyze the defendant's claim under the substantial risk standard." *Id.* at 360, 780 N.E.2d at 1241–42 (internal citations omitted). That standard requires the court to "review the evidence and the case as a whole" and to "ask a series of four questions: (1) Was there error? (2) Was the defendant prejudiced by the error? (3) Considering the error in the context of the entire trial, would it be reasonable to conclude that the error materially influenced the verdict? (4) May we infer from the record that counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision?" *Id.* at 360–61, 780 N.E.2d at 1242 (internal citations and blurbs omitted). The SJC made no express mention of any federal standard of review of Kilburn's constitutional rights.

■ It is well established that where a federal claim was never addressed by the state courts, but, rather, the state court decided an issue solely on state law grounds, the state court's decision is not entitled to the deferential review defined in the AEDPA. Instead, the federal claim is entitled to a *de novo* review. *See Fortini v. Murphy,* 257 F.3d 39, 47 (1st Cir. 2001); *DiBenedetto v. Hall,* 272 F.3d 1, 6–7 (1st Cir.2001). The exception to this rule, which the government contends applies here, is where the state law standard is "more favorable to defendants than the Federal Constitutional standard." *McCambridge v. Hall,* 303 F.3d at 35 (internal quotation omitted). Under such circumstances, "[i]f the conviction survives this more lenient state standard, then, absent exceptional circumstances, it follows that the conviction would survive the federal standard . . . ." *Id.* Thus, "[i]f there is a federal or state case that explicitly says that the state adheres to a standard that is more favorable to defendants than the federal standard (and it is correct in its characterization of the law), [the federal court] will presume the federal law adjudication to be subsumed within the state law adjudication." *Id.*

It is well established in the Commonwealth of Massachusetts that "[t]he SJC has explained that the 'substantial likelihood of a miscarriage of justice' standard is 'more favorable to a defendant than is the constitutional standard for determining the ineffectiveness of counsel.' Thus, if the SJC found that the 'substantial likelihood of a miscarriage of justice' standard was not met, it must have concluded that the *Saferian/Strickland*[17] standard for ineffective assistance of counsel was not met as well." *Mello v. DiPaulo,* 295 F.3d 137, 144 (1st Cir.2002) (quoting *Commonwealth v. Wright,* 411 Mass. 678, 682, 584 N.E.2d 621, 624 (1992)). Under Massachusetts

---

**17.** *Commonwealth v. Saferian,* 366 Mass. 89, 315 N.E.2d 878 (1974) defines the standard for ineffective assistance of counsel under Massachusetts state law. It is "roughly equivalent to the *Strickland* standard." *Ouber v. Guarino,* 293 F.3d at 30–31 n. 8.

law, "when the claim of ineffectiveness is predicated, as it is here, on counsel's failure to object to something that occurred at trial, the standard for evaluating the ineffectiveness claim is not significantly different from the substantial risk standard that is applicable to our review of the underlying, unpreserved error." *Commonwealth v. Azar*, 435 Mass. at 686, 760 N.E.2d at 1233. *See also Commonwealth v. Randolph*, 438 Mass. 290, 296, 780 N.E.2d 58, 65 (2002) ("when a defendant alleges that his failure to preserve an issue for appeal stems from ineffective assistance of counsel, as this defendant has, we do not evaluate the ineffectiveness claim separately. If we determine that an error has been committed, we ask whether it gives rise to a substantial risk of a miscarriage of justice-ineffectiveness is presumed if the attorney's omission created a substantial risk, and disregarded if it did not.").

Since the state standard applied to Kilburn's ineffective assistance of counsel claim vis-a-vis the jury charge was more favorable to him than the federal ineffective assistance of counsel standard, de novo review is not appropriate. *McCambridge v. Hall*, 303 F.3d at 35. Consequently, this court's inquiry is whether the SJC's decision that there was no substantial likelihood of a miscarriage of justice "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). For the reasons detailed above, the SJC's conclusion that there was no prejudice to the defendant as a result of counsel's lack of objection is amply supported by the record. Kilburn's claim of ineffective assistance of counsel does not warrant the allowance of his habeas petition.[18]

## D. *Ground Three: Changing Theories On Appeal*

Kilburn's final ground for habeas relief is his contention that his due process rights were violated because the prosecution allegedly changed its theory on appeal. *See* Order on Motions Defining Scope of Habeas Corpus Petition (Docket No. 86) at 2. Specifically, Kilburn contends that at trial the Commonwealth argued that the "predicate felony was the assault that resulted in the victim's death," while on appeal it relied on another assault. *Id.* To the extent that Kilburn is contending that the Commonwealth changed its theory from an assault on Laliberte to an assault on Loer, that argument is not supported by the record. As detailed above, the Commonwealth consistently argued that Laliberte was both the murder victim and the victim of the predicate felony assault. As the SJC found, "[f]rom indictment to closing argument, the prosecutor consistently maintained that the defendant was guilty of both murder and an armed assault on Laliberte under a joint venture theory." *Kilburn II*, 438 Mass. at 363, 780 N.E.2d at 1243.

It is undeniable that the Commonwealth did not distinguish between the two assaults on Laliberte during the trial, and did present a much clearer argument on appeal as to what conduct constituted the

---

18. The Commonwealth does not contend that Kilburn's claim of ineffective assistance of counsel has been procedurally defaulted. Consequently, this court will not address the myriad of cases relied on by Kilburn in his pro se filings relating to when a claim of ineffective assistance of counsel has been waived. *See, e.g., Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003) (Supreme Court holds that an ineffective assistance of counsel claim may be brought for the first time in a collateral proceeding under 28 U.S.C. § 2255, even though the petitioner could have raised the claim on a direct appeal).

underlying felony. As detailed above, however, the First Circuit's decision in *Gunter v. Maloney* makes it clear that Kilburn's claim cannot prevail. Where, as here, "[t]here is no serious question of fair notice to the defendant" that he was facing a felony-murder claim, proof of all the assaults "was part of the Commonwealth's case all along, and the evidence of those assaults was produced before the jury," there is no due process violation. *Gunter v. Maloney*, 291 F.3d at 83.[19]

### IV. *CONCLUSION*

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Petition for Writ of Habeas Corpus, as amended, be DENIED.[20]

June 24, 2005.

**19.** To the extent Kilburn challenges other perceived errors in either the Commonwealth's positions in connection with his Motion for Release or in the SJC decision, they are not exhausted and are not being considered. "In order to present a federal claim to the state courts in a manner sufficient to satisfy exhaustion concerns, a petitioner must inform the state court of both the factual and legal underpinnings of the claim." *Scarpa v. Du-Bois*, 38 F.3d 1, 6 (1st Cir.1994), and cases cited. Thus, the exhaustion requirement "is not satisfied if a petitioner presents new legal theories or new factual allegations in federal court that transform his claim or cast it in a significantly different light." *Domaingue v. Butterworth*, 641 F.2d 8, 12 (1st Cir.1981).

**20.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn*, 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 4 (1st Cir. 1998).